FILED
 2014 Aug-29  PM 04:58
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| AUTOMOBILI LAMBORGHINI S.p.A., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JACK MONROE JOHNSON, ) <br> a/k/a JACKIE JOHNSON, *et al.,* ) <br> ) <br> Defendants. ) | Case No. 5:13-cv-1136-TMP |

## **MEMORANDUM OPINION REGARDING FINAL JUDGMENT BY DEFAULT**

This cause is before the court on plaintiff's motion for a final judgment by default and other relief against the defendants (doc. 62) as a sanction for the defendants repeated failures to comply with the court's orders on discovery.  By order entered August 21, 2013, the court granted the plaintiff's motion to order the defendants to show cause (doc. 55) and ordered the defendants to show cause in seven (7) days why default judgment against them should not be entered.  No response has been filed or received.

The complaint commencing this action was filed on June 18, 2013.  The plaintiff, Automobili Lamborghini, S.p.A., ("Lamborghini") alleges that defendants Jackie Johnson (a/k/a as Jack Monroe Johnson) and Car Kit, Inc., have produced automobile bodies made to look like certain models of the Lamborghini cars produced by plaintiffs, and that the production of these fiberglass auto bodies infringed on patents and trademarks held by the plaintiff.  (Doc. 1).   The plaintiff seeks injunctive relief in the form of: (a) an injunction prohibiting defendants from using the Lamborghini trademarks

and design or from selling any models that use the Lamborghini trademarks; (b) a recall of all offending car kits sold by the defendants; (c) impoundment and destruction of all infringing body parts and molds; and (e) cessation of any advertising or internet postings using the plaintiff's trademarks.  (Doc. 1, pp. 13-16).  Plaintiff further seeks what the court construes as some sort of declaratory relief in the form of: (a) an order finding that the defendants infringed on the trademarks and patents; (b) an order finding that defendants used counterfeit marks; and (c) an order that the defendants violated Sections 1125(a) and (c) of the Lanham Act.  (Doc. 1, p. 16).  Finally, plaintiff seeks damages to be determined at trial for Lanham Act violations, treble damages pursuant to 115 U.S.C. §§ 1117(a) and (b), statutory damages pursuant to 115 U.S.C. § 1117(c), a declaration that the case is exceptional pursuant to 35 U.S.C. § 285, punitive damages, costs, expenses, disbursements and attorney's fees, and pre-judgment and post-judgment interest.  (Doc. 1, p. 17).

Defendants filed an answer and were represented by counsel.  (Doc. 8).  Plaintiff filed an amended complaint, without seeking leave to do so, after the defendants had answered.  Defendants filed an answer to the amended complaint.  (Doc 12).  The parties have consented to the dispositive jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 14).

Discovery did not proceed smoothly.  The plaintiff filed its first motion to compel on October 21, 2013.  (Doc. 18).  Defendants did not file a response, and after a hearing on the motion, the court granted the motion to compel (doc. 22), and awarded fees to plaintiff against defendants in the amount of $3,757.50, with both defendants jointly and severally liable for payment of the fees (doc. 26).

Plaintiff filed its motion for an order to show cause on January 8, 2014, (doc. 32), supported by an affidavit, which asserted that defendants had failed to pay the fees as ordered by the court. Plaintiff sought a finding that the defendants were in contempt and an accompanying fine. Defendants were given time in which to respond to the motion (doc. 33), but did not file any response. Plaintiff filed a motion for reconsideration and a second motion to compel (doc. 34), asserting that newly discovered evidence, in the form of a YouTube video, contradicted defendants' assertion that Car Kit, Inc., is a cash-only business with no employees. The motion also sought a default judgment as a sanction for the failure to provide discovery and the failure to pay the sanctions previously ordered by the court. Defendants have not filed any response to the motion.[1]

On February 18, 2014, plaintiff filed a third motion to compel (doc. 37), supported by an affidavit,[2] and a motion for leave to file a second amended complaint (doc. 38). The motion for leave to amend was granted, and defendants filed an amended answer (doc. 43). The court set the pending motions (docs. 32, 34, and 37) for hearing and further directed defendant Johnson to appear and attend the hearing with counsel. Counsel for the defendants filed a motion to withdraw the day before the motion hearing. Although counsel attended the hearing, neither Johnson nor a corporate representative of Car Kit appeared. Defendants' counsel's motion to withdraw was granted. (Doc. 48).

---

[1] The parties jointly filed a stipulation on February 11, 2014 (doc. 36), stating that the proper name of the defendant referred to as Jackie Johnson should be Jack Monroe Johnson. The Clerk hereby is DIRECTED to change the style of this case to reflect the individual defendant's proper name.

[2] The affidavit contains references to several exhibits, but no exhibits were attached to the affidavit or motion.

The court, by order entered April 23, 2014, advised defendant Johnson that he should have counsel appear on his behalf or indicate to the court that he intended to proceed *pro se*; the court further advised Car Kit, Inc., that, as a corporation, it could not be represented by a non-lawyer, and ordered Car Kit, Inc., to retain counsel and have counsel enter an appearance within 30 days. (Doc. 52). The court further warned the defendants that failure to respond to the order could result in entry of a default judgment, along with award of injunctive relief, damages, attorney's fees, costs, and expenses. On May 8, 2014, Johnson filed a response, stating that he would appear *pro se*, and asserting that he had "provided as much response to discovery as is possible." (Doc. 53). Johnson filed a separate document, purporting to be the response on behalf of Car Kit, Inc., stating that the corporation "cannot afford" to retain an attorney and that it "understands that the Court is likely to enter a default judgment against it and consents to same." (Doc. 54).

On June 19, 2014, plaintiff filed its motion for entry of a an order requiring the defendants to show cause why default judgment should be entered against them. (Doc. 55). In one last attempt to allow the defendants to respond appropriately to plaintiff's discovery requests, the court entered an Order on July 30, 2014, requiring defendants Johnson and a Rule 30(b)(6) corporate representative of Car Kit, Inc., to appear on August 15, 2014, and be deposed on several expressed subject areas. Defendants failed to appear and the depositions never occurred. After plaintiff renewed its motion for a default judgment, the court gave the defendants seven (7) days to response to the motion, but, again, they have not.

Entry of a default judgment is an extreme sanction that is appropriate only when a party's disobedience to discovery orders is willful and after it is clear that lesser sanctions are ineffective. As the Eleventh Circuit has explained:

> The sanction of striking the defendants' answers and entering a default judgment against them was authorized by Rule 37(b)(2)(C). This rule provides in relevant part:
>
>> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:....(C) An order striking out pleadings ... or rendering a judgment by default against the disobedient party....
>
> FED.R.CIV.P. 37(b)(2)(C). This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders; however, this discretion is guided by judicial interpretation of the rule. For example, a default judgment sanction requires a willful or bad faith failure to obey a discovery order. *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S. Ct. 1087, 1096, 2 L. Ed. 2d 1255 (1958). Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal. *In re Chase and Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989) (inability to comply); *Equal Employment Opportunity Comm'n v. Troy State Univ.*, 693 F.2d 1353, 1357 (11th Cir. 1982)(simple negligence or misunderstanding). In addition, the Supreme Court has interpreted the Rule 37 requirement of a "just" sanction to represent "general due process restrictions on the court's discretion." *Insurance Corp. of Ireland, Ltd., v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2106, 72 L. Ed. 2d 492 (1982). Finally, the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders. *See Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988).

*Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993); *see also United States v. Certain Real Property Located at Route 1, Bryant, Alabama*, 126 F.3d 1314, 1317-18 (11th Cir.1997); *Allstate Ins. Co. v. Palterovich*, 2008 WL 2741119 (S.D. Fla. July 12, 2008). In the instant case, it does appear that defendants have disobeyed previous court orders related to discovery.

The court's skepticism regarding the defendants' willingness to comply with their discovery duties was confirmed by their failure to appear for depositions on August 15, 2014. The court did not receive the defendants' request for a continuance of the deposition until August 18, three days after it was ordered to take place. It appears to be nothing but another delaying tactic.

Having reviewed the proceedings in the this case, the court finds that the defendants have willfully and contemptuously delayed and obstructed plaintiff's legitimate discovery efforts, and that they have willfully ignored and disobeyed the court's orders regarding discovery. Defendants have produced no documents related to their sales of allegedly infringing auto bodies or their use of plaintiff's marks and logos. They have provided no information about the molds used to make the fiberglass auto bodies, where the molds are located, or from whom they were obtained. Defendants failed to appear for deposition on August 15 and have offered no explanation since for their failure to appear for deposition. There remains no alternative form of discovery plaintiff might use to obtain this and other material information, and entry of a default judgment against the defendants is an appropriate sanction for their refusal to comply with discovery and the court's orders regarding discovery.

Once a party has defaulted, all well-pleaded factual allegations of the complaint are deemed admitted and proven. The Eleventh Circuit as stated the law of default as follows:

> The entry of a default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to defend the action. While "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," a defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded allegations of fact." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* Thus, before entering a default *judgment* for damages, the district court must ensure that the

> well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.  At that point, the defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought.  *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citing *Nishimatsu*, 515 F.2d at 1206).

*Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (Italics in original and internal footnotes omitted); *see also Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'")(quoting *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *E Beats Music v. Andrews*, 433 F.Supp.2d 1322 (M.D.Ga. 2006).  Under this law, the court is required to examine the factual allegations of the complaint, deeming them to be admitted, and the evidence offered in support of the complaint to determine whether there is a sufficient substantive basis for finding the defaulting defendant liable as alleged by plaintiff and for awarding the particular relief sought by the plaintiff.

Reviewing the materials submitted in support of the amended complaint and the motion to show cause (doc. 55), there is little question that the plaintiff is entitled to recover for defendants' infringing conduct.  Plaintiff has asserted claims for trademark infringement (15 U.S.C. § 1114(1)), false designation of origin (15 U.S.C. § 1125(a)), dilution (15 U.S.C. § 1125(c)), Alabama common law trademark infringement, Alabama unfair competition, and design patent infringement (35 U.S.C. § 271).  To prove trademark infringement, the plaintiff must show " (1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause

confusion, to cause mistake, or to deceive." *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1310 (M.D. Fla. 2013), citing *General Motors Corp. v. Phat Cat Carts, Inc.*, 504 F.Supp.2d 1278, 1283 (M.D.Fla.2006); *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir.1989). A false designation of original claim requires "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir.2007). Likewise, in a dilution claim, "the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." *Id.* at 1312-1313, citing *Rain Bird Corp. v. Taylor*, 665 F.Supp.2d 1258, 1266-67 (N.D.Fla.2009) (noting that, after the 2006 amendments to 15 U.S.C. § 1125, a plaintiff need only prove a likelihood of dilution rather than actual dilution). Finally, a design-patent infringement occurs when (1) an items appears "substantially similar" to an item with a patent design so that the appearance deceives an ordinary observer and (2) the infringing item "must appropriate the novelty of the patented device which distinguishes it from prior art." *L.A. Gear, Inc., v. Thom McAn Shoe Company*, 988 F.2d 1117 (Fed.Cir.1993); *see also Lentek Int'l Inc. v. Sharper Image Corp.*, 164 F. Supp. 2d 1302, 1306 (M.D. Fla. 2001).

The plaintiff is the registered owner of certain marks and logos, including the "Lamborghini Raging Bull" mark and the names, Lamborghini, Murcielago, and Reventon, which defendants have clearly and unambiguously used in an infringing manner to advertise and market their fiberglass auto

body kits.  *See* doc. 55-1 and exhibits annexed thereto.  Additionally, the auto body kits themselves are manufactured for the purpose of copying the automobile designs of Lamborghini Murcielago, Reventon, and Diablo automobiles, including the use of plaintiff's scissor doors design.   Internet advertising by defendants has expressly stated, "Take your old wrecked Fiero and make a Lamborghini Murcielago supercar replica."  The well-pleaded factual allegations of the complaint taken together with the additional matters contained in the declarations of Ned Branthover leaves no doubt that defendants have attempted to use the fame and market power of the Lamborghini marks, logos, and designs to foster their own commercial activities.

Plaintiff admits that it has no evidence directly proving economic damages from defendant's infringing activities, but contends that it is entitled to statutory damages and injunctive relief.  There is no evidence related to the revenue or profits defendants derived from their sale of infringing auto bodies.  It seems unlikely that plaintiff has suffered an actual loss of income due to the infringement. A person in the market to buy a fiberglass auto body does not seem to be the type of person who might have bought a real Lamborghini but did not due to the availability of counterfeit auto bodies. Statutory damages under 15 U.S.C. § 1117(c) are appropriate, as one court as explained:

> The statutory damage provision, § 1117(c), was added in 1995 because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept ... making proving actual damages in these cases extremely difficult if not impossible."  *Tiffany Inc. v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y.2003)(citing S.Rep. No.177, 104th Cong.1995).  Several courts have found statutory damages specially appropriate in default judgment cases due to infringer nondisclosure.  *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165 (S.D.N.Y.1999).  *See also Tiffany*, 282 F.Supp.2d 123; *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D.Cal.2003).

*PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219-20 (S.D. Fla. 2004). Statutory damages for use of counterfeit marks include (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," but if the violation is willful, "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

      In this case, the court finds that the violations were willful. Plaintiff has offered evidence that it communicated with defendants to gain compliance with its trademarks, but defendants refused to cease making and selling fiberglass auto body kits prominently displaying Lamborghini marks both on the kits and in advertising. Defendants offered the body kits for slightly less than $3,000 each, according to the advertising submitted by plaintiff, but neither the court nor plaintiff has any evidence as to how many such kits were sold. It is clear that defendants offered for sale only one "type of goods," the fiberglass auto body kits. Defendants used several counterfeit marks, however, including the names Lamborghini, Lambo, Murcielago, Reventon, and Diablo, as well as the Lamborghini Raging Bull logo, on five different auto body kits offered for sell. Additionally, the auto body kits were intentionally designed to mimic the look of at least three of plaintiff's automobile styles, and most particularly the scissor door design. 15 U.S.C § 1117.

      Although the plaintiff insists that the court should award the maximum statutory damages for willful infringements, for a total of $10 million, the court finds this amount to be excessive and unjust. There is no indication that the defendants' operations netted them such large amounts of profits or that they caused an injury of such an extent to the defendant. Recognizing the need to

deter these defendants from continuing to infringe plaintiff's trademarks in the names Lamborghini, Lambo, Murcielago, Reventon, and Diablo, as well as the novel scissor door design of its automobiles, the court finds that statutory damages of $25,000 per infringement use of a counterfeit mark per type of goods sold is adequate to compensate the plaintiff and deter further infringements by defendants. The court notes that the five auto body kits were offered for sale for the relatively small amount of about $3,000, of which only a fraction would represent the profit of the defendants. A total amount of statutory damages of $125,000.00 ($25,000 times five infringements) is just and adequate. Damages for the design-patent infringements of the Murcielago and Reventon designs can come under either 35 U.S.C. §284 for lost royalties or § 289 for the profits of the infringer. Here, no one knows the profits of the infringer, thus limiting the damages to something "adequate to compensate for the infringement," plus the possibility of trebling that amount under § 284. Plaintiff has not presented any evidence concerning the value of a royalty it could have claimed in the use of its design patents. The finds, however, that $50,000.00 is adequate to compensate the plaintiff for the infringements carried out by this relatively small operation. Accordingly, total statutory damages to be awarded the plaintiff is $175,000.00, plus its costs and attorneys' fees in this matter.[3]

In addition to the damages awarded herein, plaintiff also is entitled to further injunctive relief to preclude continued future infringement of its marks and designs by the defendants. The court will entered mandatory injunction requiring the defendants to identify and surrender to the plaintiff the molds used to make the fiberglass auto body kits, and authorizing the plaintiff to take possession of

---

[3] Plaintiff may move in the next fourteen (14) days to prove its attorneys' fees, supported by appropriate proof of the time spent and rates charged in order to allow the court to determine a lodestar amount for a fee.

the molds for purposes of destroying them, and otherwise enjoining any future infringing uses of plaintiff's trademarks, logos, or designs.

    An appropriate judgment will be entered.

    Done the 29th day of August, 2014.

                                      T. MICHAEL PUTNAM
                                      U.S. MAGISTRATE JUDGE